721 So.2d 964 (1998)
STATE of Louisiana
v.
Gerald BARGEMAN.
No. CR98-617.
Court of Appeal of Louisiana, Third Circuit.
October 28, 1998.
Rehearing Denied December 11, 1998.
*965 Robert Richard Bryant, Jr., Lake Charles, David L. Kimball, ADA, Mike K. Stratton, Lake Charles, for State.
Phyllis E. Mann, Alexandria, Paula C. Marx, Lafayette, for Gerald Bargeman.
Before DOUCET, C.J., and COOKS and SULLIVAN, JJ.
SULLIVAN, Judge.
Defendant seeks a Crosby[1] appeal for his conviction and sentence for possession of cocaine, a violation of La.R.S. 40:967(C). For the following reasons, we reverse his conviction.

FACTS
On August 14, 1996, Judge Fred Godwin conducted a hearing on Defendant's motion to suppress. The facts presented in this appeal are the same facts adduced at the suppression hearing. At the conclusion of the hearing, Judge Godwin granted the motion to suppress. The State filed an application for supervisory writs, which this court granted. Thereafter, Defendant entered into a plea bargain before Judge Patricia Minaldi whereby the State reduced the charge from possession of cocaine with intent to distribute to possession of cocaine. There was a joint sentence recommendation, and Defendant reserved his right to appeal the ruling on the motion to suppress.
The Lake Charles Police Department had been receiving anonymous calls since June of 1995 about drug activity at the Lake Charles Truck Driving School. According to the callers, Simon Thomas, the manager of the school, was dealing and smoking crack cocaine at the school. On October 27, 1995, an anonymous caller said that narcotics would be delivered that day to Simon Thomas by someone driving a brown car.
Officer Mike Reed and Officer Sierra went to Paul Savoie, the owner of the school, and informed him of the information they had received. Mr. Savoie told them to do whatever was needed to take care of the problem and signed a consent to search the premises of the school. The officers then set up surveillance of the school for several hours. During the surveillance, the officers were dressed in blue jeans and T-shirts with their badges and guns on their persons.
The first vehicle to come onto the premises was a white Suburban; it was not stopped. Next, a brown two-door vehicle drove onto the premises; it was stopped by the officers. The officers obtained the driver's consent to search the car and located a joint of marijuana during the search.
While the police officers were arresting the driver of the brown car, another car drove up *966 to the school. This was a 1972 white or ivory Impala driven by Mrs. Irma Bargeman, Defendant's mother; Defendant was a passenger in the car. Officer Reed testified that he and Officer Sierra first asked Mrs. Bargeman if she had any narcotics in the car; she answered, no, and told the officers they could search the car. According to Mrs. Bargeman and Defendant, the officers first told them not to move the car, then asked both of them to get out of the car. When Mrs. Bargeman asked why she could not move her car, one of the officers told her that he was a Lake Charles police officer. Mrs. Bargeman testified that she did not know the officers identity until that time.
Upon request by the officers, Mrs. Bargeman verbally consented to a search of her car and signed a consent to search form. No drugs were found in the car. The officers then asked Mrs. Bargeman if they could search her purse, and she agreed. No drugs were found in her purse.
Next, the officers went to Defendant and conducted a pat down search of his person. Officer Reed testified he asked Defendant if he could pat him down, and Defendant said, yes. Defendant testified that Officer Reed did not ask his consent before conducting the pat down search. According to Defendant, the officer came over to him after searching the car and his mother's purse, told him to stand against the car and put his hands on top of the car. The officer then conducted a pat down search of his person.
During the search, Officer Reed felt an object in the front pocket of Defendant's pants. According to Officer Reed, he asked Defendant if he could remove the contents of the pocket; Defendant agreed. One of the items Officer Reed found in the pocket was a matchbox. When he asked Defendant what was inside the box, Defendant said matches. The officer then asked if he could look inside, and Defendant said, yes. Several rocks of crack cocaine were found inside of the box.
On cross-examination, Officer Reed said he searched Defendant to insure his safety, but admitted Defendant and his mother were polite and cooperative and that he did not fear for his safety. He waited until after he searched the vehicle and Mrs. Bargeman's purse before he searched Defendant. Defendant had been standing outside the vehicle while the vehicle and purse were searched. Officer Reed testified that he thought the object in Defendant's pocket was a razor blade.
Defendant testified he was not asked for permission to search his person. As to the matchbox, he testified that the officer reached into his pocket, pulled out a coin purse, which contained the matchbox, opened the coin purse, and then opened the matchbox inside of it. Mrs. Bargeman saw the officer remove the small purse from Defendant's pocket. There was nothing in Officer Reed's testimony about a small purse or pouch holding the matchbox.
The trial court found the stop of the Bargemans to be an illegal detention and that the consents to search given by them were invalid because they were tainted by this illegal conduct. Specifically, the trial court found that, even though Defendant consented to the search of his person, the consent was not sufficiently attenuated from the illegal stop to be considered voluntary. The trial court ruled that the deputies exploited the illegal stop to obtain Defendant's consent, and since Defendant was not informed that he was free to refuse the pat down search, the matchbox and its contents were illegally obtained.

ASSIGNMENT OF ERROR
The prior grant of supervisory writs does not bar reconsideration of an issue on appeal, when a manifest injustice would occur without a reconsideration. Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973); Guilbeaux v. The Times of Acadiana, Inc., 96-360 (La.App. 3 Cir. 3/26/97); 693 So.2d 1183, writ denied, 97-1840 (La.10/17/97); 701 So.2d 1327.
Defendant contends the evidence seized from the matchbox was the product of an illegal detention, resulting in a consent to search that was not the product of Mr. Bargeman's free will. Therefore, the evidence should have been suppressed.
The question of whether the consent to search resulted from an illegal detention is *967 primarily a credibility determination. The key issue here is what happened between Defendant, his mother, and the police officers when the police stopped their car.
When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. State v. Burkhalter, 428 So.2d 449 (La.1983), and State v. Gaspard, 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The admissibility of evidence seized without a warrant is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a consent for admissibility purposes will not be overturned on appeal, unless the conclusions are unsupported by the evidence. State v. Gachot, 609 So.2d 269 (La.App. 3 Cir.1992), writ denied, 617 So.2d 1180 (La.1993), cert. denied, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993).
The evidence presented at the hearing on Defendant's motion to suppress supports the trial court's conclusion. There were inconsistencies in the testimony of the witnesses. The trial court resolved these inconsistencies in favor of Defendant. The trial court found that the police ordered Mrs. Bargeman to stop her car and ordered her and Defendant out of the car. The trial court determined that the police did not have probable cause nor reasonable suspicion to detain the white car because the anonymous caller identified a brown car. Ultimately, the trial court concluded that Defendant's consent to search his person, and, then, the containers found in his pocket was not sufficiently attenuated from the illegal stop to be valid and suppressed the evidence obtained from the searches.
In ruling on the motion to suppress, the trial court relied upon the case of State v. Owen, 453 So.2d 1202, 1206 (La.1984) (citations omitted), wherein the Louisiana Supreme Court explained:
[I]f the consent was obtained after an illegal detention or entry, the consent was valid only if it was the product of a free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be a product of a free will are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct.
The pivotal question here is whether the initial detention of the Bargeman automobile was a legal seizure or stop. A form of "seizure" which is permitted without the need of a warrant or probable cause is an investigatory stop made pursuant to La.Code Crim.P. art. 215.1(A). Cf. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Unlike an arrest which can be made only on probable cause, an investigatory stop may be made under the more relaxed "reasonable suspicion" standard. The right to make an investigatory stop and question the individual detained must be based upon reasonable cause or reasonable suspicion to believe that the person has been, is, or is about to be engaged in criminal conduct. La.Code Crim.P. art. 215.1; State v. Belton, 441 So.2d 1195 (La.1983). In determining whether or not reasonable cause exists to temporarily detain a person or a piece of property, the totality of the circumstances must be considered. State v. Huntley, 97-0965 (La.3/13/98); 708 So.2d 1048.
In State v. Thibodeaux, 531 So.2d 284 (La.App. 3 Cir.1987), this court noted that reasonable cause for an investigatory stop is less than probable cause, but the officer must have "articulable knowledge" of particular facts, which, in conjunction with reasonable inferences drawn therefrom, is sufficient to provide reasonable grounds of past, present, or future criminal activity. A "hunch" or generalized suspicion is not sufficient. However, if the police officer has a specific suspicion of criminal activity, he may *968 further detain the individual or the property while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).
The police officers in the present case had no probable cause to believe the Bargemans were delivering narcotics to Simon Thomas; their vehicle did not match the description given by the anonymous caller. Officer Reed's testimony did not include any articulable facts or particularized suspicions about the Bargemans being involved in criminal conduct. He was the only officer to testify at the suppression hearing. Therefore, there was no legal justification for detaining the Bargemans and asking for their consent to search the car, the purse, and finally, Defendant's person.
The evidence supports the findings of the trial court that the Bargemans did not have the right to leave because they had been ordered by a police officer not to move their car and that Defendant's consent was not sufficiently attenuated from this illegal stop. With regard to the trial court's finding that Defendant's consent was not sufficiently attenuated from the illegal stop, the trial court cited two of the four factors enumerated in Owens: the deputies did not inform Defendant that he could refuse to consent to the pat down search, and the purpose and flagrancy of the misconduct was so the deputies could exploit their illegal detention of the Bargemans. While not cited by the trial court for its conclusion, the evidence also established that Defendant's consent to search was given approximately fifteen minutes after the illegal detention and without the occurrence of any intervening circumstances, such as suspicious behavior or discovery of incriminating evidence. In our opinion, these factors also support the trial court's determination that the cocaine was illegally obtained.

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Review of the record reveals one error patent: the trial court did not inform Defendant that the offense to which he pled could be used to enhance the penalty for any subsequent offense he may commit. Since we reverse the conviction of Defendant, it is not necessary to further address this error.
For the foregoing reasons, we find that Judge Godwin did not err in granting Defendant's motion to suppress. Therefore, Defendant's conviction is hereby reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Pursuant to State v. Crosby, 338 So.2d 584 (La.1976), a defendant may plead guilty to a charge, while reserving his right to appeal the ruling on a pretrial motion, such as a motion to suppress.