STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KA 10-588

STATE OF LOUISIANA

VERSUS

TERRANCE A. MARTIN

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 33804-09
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Billy Howard Ezell, Judges.

Amy, J., dissents and assigns reasons.

REVERSED.

**John Foster DeRosier**
**District Attorney Fourteenth Judicial District Court**
**David Palay**
**Carla Sue Sigler**
**Assistant District Attorneys**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**Counsel for Plaintiff/Appellee:**
**State of Louisiana**

**Paula Corley Marx**
**Louisiana Appellate Project**
**P. O. Box 80006**
**Lafayette, LA 70598-0006**
**(337) 991-9757**
**Counsel for Defendant/Appellant:**
**Terrance A. Martin**

**William Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
**Terrance A. Martin**

**EZELL, JUDGE.**

On October 21, 2009, the Defendant, Terrance A. Martin, was charged by bill of information with possession of Carisoprodol (Soma), a schedule IV controlled dangerous substance (CDS), a violation of La.R.S. 40:969(C). On February 10, 2010, several matters were taken up. First, the Defendant's probation for prior convictions and sentences was revoked, and the trial court imposed the previously suspended sentences. Next, the Defendant's motion to suppress, filed in the instant case, was heard and subsequently denied.

Immediately following the probation revocation and suppression hearings, the Defendant entered a guilty plea to the charge herein, pursuant to *State v. Crosby*, 338 So.2d 584 (La.1976). As part of the plea agreement, the State dismissed charges pending in an unrelated docket number and agreed not to file a habitual offender bill against the Defendant. He was then sentenced to serve five years at hard labor, to run concurrently with the sentences imposed following the revocation of his probation. A motion to reconsider sentence was not filed.

The Defendant is now before this court on appeal, asserting that the trial court erred in denying his motion to suppress and that his sentence is excessive.

**FACTS**

The following facts were set forth at hearing on the Defendant's motion to suppress. On August 16, 2009, the Defendant was walking out of a convenience store when he was approached by Corporal Matthew Thomas Gibbs of the Calcasieu Parish Sheriff's Office. Corporal Gibbs asked the Defendant for his identification so that he could check for outstanding warrants. At that time, Corporal Gibbs noticed that the Defendant was nervous and was sweating profusely. He then asked the Defendant if he had anything illegal on his person. The Defendant responded, "Yes, sir, I got

1

four Somas in my pocket." Corporal Gibbs then patted down the Defendant, recovered the pills, and arrested him for possession of same.

## ASSIGNMENT OF ERROR NUMBER ONE

By this assignment of error, the Defendant argues that the trial court erred in denying his motion to suppress. The Defendant sought to suppress evidence seized in the instant matter as well as in the unrelated docket number that was dismissed as part of his plea agreement. On appeal, the Defendant argues that the trial court erred in denying both motions to suppress, including the dismissed matter. The trial court's denial of the Defendant's motion to suppress filed in the unrelated matter is moot, however, and is not addressed herein.

The Defendant contends that Corporal Gibbs did not have reasonable suspicion that a crime had been, was being, or was about to be committed. Because Corporal Gibbs had no reason to detain the Defendant or to question him regarding possible criminal conduct, the Defendant maintains that any evidence seized as a result of the illegal detention should have been suppressed as fruit of the poisonous tree, pursuant to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407 (1963).

As noted by this court in *State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658:

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. *State v. Burkhalter*, 428 So.2d 449 (La.1983), and *State v. Gaspard,* 96-1279 (La.App. 3 Cir. 2/11/98); 709 So.2d 213. The admissibility of evidence seized without a warrant is a question for the trial court. Its conclusions on credibility and the weight of testimony regarding the voluntariness of a consent for admissibility purposes will not be overturned on appeal, unless the conclusions are unsupported by the evidence. *State v. Gachot*, 609 So.2d 269 (La.App. 3 Cir. 1992),

2

*writ denied*, 617 So.2d 1180 (La.1993), *cert. denied*, 510 U.S. 980, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993).

Pursuant to La.Code Crim.P. art. 215.1(A), "A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." In *State v. Perrot*, 600 So.2d 805, 807, (La.App. 3 Cir. 1992), this court explained:

> The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1 as well as both state and federal jurisprudence. An officer may stop a person with less than probable cause for arrest if he has specific and articulable facts to suspect possible criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The validity of the investigatory stop depends on whether the officer has adequate articulable knowledge of particular facts, enough to warrant infringement on the person's constitutional right to be left alone. *State v. Shy*, 373 So.2d 145 (La.1979).

> However, in the case of *State v. Neyrey*, 383 So.2d 1222 (La.1979) the Louisiana Supreme Court stated that the suspicion requirements of La.C.Cr.P. art. 215.1, Article I, Section 5 of the Louisiana Constitution and the Fourth Amendment of the U.S. Constitution are necessary only when the stop is forcible. "Police officers do not need probable cause to arrest, or reasonable cause to detain, in order to converse with its citizens." *State v. Shy*, [373 So.2d at 147]. In *Neyrey*, the officer approached a parked car that was blocking a driveway to an apartment. The officers testified no reasonable suspicion concerning commission of a crime existed. The defendant was inside the car passed out. Officers awakened him and asked him to leave at which time he passed out again. The officers then asked him to exit the car and, in complying, a bag of cocaine fell from defendant's lap. The court held there was no forcible detention as defendant was free to leave at any time. Therefore, the reasonable suspicion standard did not apply.

> Furthermore, as long as the person to whom questions are put remains free to disregard questions and walk away, there has been no intrusion upon that person's liberty or privacy as would require some particularized and objective justification under the fourth amendment. See *State v. Belton*, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); *State v. Lanter*, 391 So.2d 1152 (La.1980); *State v. Duplessis*, 391 So.2d 1116 (La.1980).

3

Also, in *State v. Bargeman*, 721 So.2d at 967-68, this court noted:

> A "hunch" or generalized suspicion is not sufficient. However, if the police officer has a specific suspicion of criminal activity, he may further detain the individual or the property while he diligently pursues a means of investigation likely to quickly confirm or dispel the particular suspicion. *U.S. v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

Additionally, in *State v. Hall*, 581 So.2d 337, 338-39 (La.App. 3 Cir. 1991), this court found:

> [W]hen the officer decided to pat down the defendant, the "questioning phase" ended and the incident became a stop. It is axiomatic that reasonable cause for an investigatory stop is something less than probable cause. The totality of the circumstances, "the whole picture," must be considered in determining whether reasonable cause exists. Although flight, nervousness, or a startled look at the sight of a police officer is, by itself, insufficient to justify an investigatory stop, this type of conduct may be highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable cause. *State v. Belton*, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).

At the hearing, Corporal Gibbs testified that as he was walking into a convenience store in Moss Bluff, Louisiana, he saw the Defendant walking out. Corporal Gibbs stated that he knew the Defendant when they both lived in Westlake, Louisiana, and that he used to see the Defendant at football games and about town. According to Corporal Gibbs, he asked the Defendant how he was doing.

Corporal Gibbs knew the Defendant had been in trouble in Lake Charles, Louisiana, so he proceeded to ask the Defendant for his identification to check for outstanding warrants. After the Defendant gave Corporal Gibbs his identification, they continued to talk a bit. At this time, Corporal Gibbs noticed that the Defendant was nervous and that he was sweating profusely. According to Corporal Gibbs, he then asked the Defendant if he had anything illegal on his person. The Defendant responded that he had four Somas in his pocket.

4

As stated in *Perrot*, 600 So.2d 805, Corporal Gibbs did not need probable cause to arrest, or reasonable cause to detain the Defendant for the purpose of conversing with him. However, Corporal Gibbs went a step further and detained the Defendant to check for outstanding arrest warrants. At that point, the casual conversation allowed under *Perrot* ended because the Defendant was no longer free to disregard Corporal Gibbs' questions and walk away. The stop became forcible, an intrusion upon the Defendant's liberty and/or privacy, when Corporal Gibbs asked the Defendant for his identification to check for outstanding warrants. Thus, the inquiry at that point is whether Corporal Gibbs had reasonable suspicion that the Defendant was committing, had committed, or was about to commit an offense to justify detaining him. At the hearing, Corporal Gibbs testified:

> I was walking into the Five Star in Moss Bluff. I saw Terrence [sic]. He was walking out. I knew Terrence [sic] from when he lived in Westlake. I lived in Westlake. I used to see him at football games, out and about town. I asked him how he was doing. I knew he had been in some trouble in Lake Charles, so I asked him for his ID, to check him for warrants. He said – he gave me his ID. We talked a little bit. He was nervous, sweating profusely. So I asked him, I said, you know, "Terrence [sic], you got anything illegal on you?" He said, "Yes, sir, I got four Somas in my pocket." And from there, I had to pat him down, recover the Somas, arrested him and booked him in for possession.

A few more details were revealed on cross-examination:

> Q  So it's your testimony that you asked him if he was carrying anything, --
>
> A  Illegal.
>
> Q  – and he – and he just said he had four Somas?
>
> A  Yes, sir. I wish he wouldn't have. I was hungry; I was ready to eat.
>
> Q  So, you're saying – you didn't just search him –
>
> A  No, sir.
>
> Q  – because he's Terrence [sic]?

5

A       No, sir.  I checked him for warrants because he's Terrence [sic], but I didn't search him, I asked him.

Q       Did he have any warrants?

A       No, sir, he didn't have warrants.

Q       How many times do you know of that Terrence [sic] has been arrested?

A       I couldn't even guess.

Q       You were dressed similar to how you are today, more or less?

A       Exactly how I'm dressed today.

Q       Wouldn't that explain somebody, with that history, being nervous?

A       I encountered Terrence [sic] before dressed like this at football games and other civic functions in the city of Westlake and he hadn't appeared that way.

Corporal Gibbs also indicated that there were no bystanders or witnesses to his conversation with the Defendant.  He also denied asking the Defendant, first, if he was carrying any drugs, and upon his denial of same, proceeding to ask for the Defendant's identification and searching him regardless of his response.  Corporal Gibbs maintained that the only reason he searched the Defendant was because he admitted to carrying drugs.  Corporal Gibbs then clarified that he never searched the Defendant, just recovered the Soma pills after the Defendant reported they were in his pocket.

On redirect examination, the State revisited its questioning regarding Corporal Gibbs' past experiences with the Defendant.  According to Corporal Gibbs, the Defendant acted differently during the various social functions than he did the day of the instant offense.  Corporal Gibbs testified that the Defendant is usually very sociable and does not mind speaking to officers.  They usually laugh, joke, and cut up, yet on the day of the offense, Corporal Gibbs stated that the Defendant was trying

6

to avoid him. He did not elaborate, however, on the Defendant's behavior. The difference in the Defendant's behavior prompted Corporal Gibbs to ask the Defendant if he had anything illegal.

The trial court concluded that Corporal Gibbs had probable cause to search the Defendant because he voluntarily acknowledged, in response to a question, that he was in possession of the Soma pills. The trial court did not address the Defendant's initial detention and whether or not Corporal Gibbs had reasonable suspicion to detain the Defendant.

Considering La.Code Crim.P. art. 215.1 and the jurisprudence cited herein, Corporal Gibbs' testimony did not include any articulable facts or particularized suspicions about the Defendant's involvement in criminal conduct prior to detaining him. Corporal Gibbs opted to detain the Defendant based on the sole fact that he knew the Defendant had previously been in trouble. This knowledge was nothing more than a generalized suspicion or hunch and is not a sufficient basis for detaining an individual. *State v. Bargeman*, 721 So.2d 964. Other than this fact, Corporal Gibbs did not give any legal justification for detaining the Defendant, nor was there any evidence of suspicious activity prior to stopping the Defendant. The Defendant was simply walking out of the store. According to Corporal Gibbs, the Defendant appeared nervous and was sweating profusely after he was detained.

Accordingly, viewing the picture as a whole, the State did not show that Corporal Gibbs had articulable knowledge of particular facts upon which reasonable inferences could be drawn to provide reasonable grounds of past, present, or future criminal activity. As such, we find that the trial court erred in denying the Defendant's motion to suppress, and thus, the Defendant's conviction and sentence should be reversed and set aside.

7

## ASSIGNMENT OF ERROR NUMBER TWO

By this assignment of error, the Defendant argues that his sentence is excessive. In light of our decision to reverse and set aside the Defendant's conviction and sentence, this alleged error is now moot.

## CONCLUSION

The Defendant's conviction and sentence are reversed and set aside.

**REVERSED.**

STATE OF LOUISIANA

VERSUS

TERRANCE A. MARTIN

AMY, J., dissenting.

The majority finds that the trial court erred in denying the defendant's motion to suppress, thus reversing the defendant's conviction and sentence. I respectfully dissent, as I find an affirmation is appropriate.

In *State v. Herrera,* 09-1783, p. 1 (La. 12/18/09), 23 So.3d 896, 897, our supreme court stated:

> A law enforcement officer may approach any person and ask simple questions without a requirement of reasonable suspicion of criminal activity. *State v. Sherman*, 05-0779, p. 7 (La.04/04/06), 931 So.2d 286, 291. Mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. *Id.* An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. *I.N.S. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *Sherman*, 05-0779 at 7, 931 So.2d at 291.
>
> The distinction between a permissible encounter and a seizure was set forth in *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). The Court held that "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions...." *Id.*

The majority reverses, finding the officer did not give legal justification for detaining the defendant and that there is no evidence of suspicious activity prior to the officer stopping the defendant. However, I do not find that the encounter

between the officer and the defendant rose to the level necessitating a finding of reasonable suspicion under the Fourth Amendment.

In this case, the officer approached the defendant and began conversing with him, asking him "how he was doing." The record reveals that the officer then asked the defendant for his identification, which the defendant handed over, and the two continued to "talk[] a little bit." The officer then asked the defendant if he had anything illegal on his person, to which the defendant responded affirmatively.

Relying on the above jurisprudence, I conclude that the officer in this case had the right, without any reasonable suspicion of criminal activity, to approach the defendant and ask for his identification and ask questions. Further, I find that there is no evidence that the officer's request was followed by an "unmistakable show of official authority indicating to the [defendant]" that he was not free to leave. *See Herrera*, 23 So.3d at 897 (citing *I.N.S. v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758 (1984)). The defendant voluntarily complied with the officer's request for identification. Further, he voluntarily offered a response to the officer's potentially incriminating question. There is no evidence that the defendant's response to the officer was coerced. I note that the officer testified that he was familiar with the defendant from previous encounters around town such as football games and other civic functions The officer related that the defendant had previously been sociable and willing to speak to officers.

In light of the above, it is my view that the officer acted permissibly. For these reasons, I would affirm the trial court's denial of the defendant's motion to suppress.

2