CLARK, Justice.
hWe granted a writ to consider whether the defendant was seized when a police officer asked for his identification in order to check for outstanding warrants, and then asked the defendant if he had anything illegal on his person while retaining the defendant’s identification. Under the scant facts presented here, we find there was nothing in the conduct of the officer which decisively changed the consensual nature of the officer’s brief encounter with the defendant such that Fourth Amendment protections were implicated. Thus, we find the district court did not abuse its discretion in denying the defendant’s motion to suppress the drugs which the defendant voluntarily admitted having on his person.
FACTS AND PROCEDURAL BACKGROUND
The facts of this encounter were adduced at a suppression hearing held in this matter, during which Cpl. Matthew Gibbs of the Calcasieu Parish Sheriffs Office described his encounter with the defendant, Terrance A. Martin, on August 16, 2009. On that date, the officer saw the defendant in the parking lot of the Five Star convenience store in Moss Bluff, Louisiana, as the officer was walking in, and the defendant was walking out. The officer was in uniform. The two men knew each other and Cpl. Gibbs asked the defendant how he was doing. Because he knew that the defendant “had been in some trouble in Lake Charles,” the officer asked the | defendant for his identification to check for outstanding warrants. The two men talked for a little while. Cpl. Gibbs noticed the defendant was nervous and sweating profusely, unusual behavior not characteristic of their previous encounters at football games and other civic functions when their paths would cross and they would “laugh, joke, cutup.” Presumably while retaining the defendant’s identification, and based on his observations of Martin’s uncharacteristic behavior, Cpl. Gibbs inquired whether the defendant had anything illegal on him. The defendant replied he had four Soma pills in his pocket. The officer retrieved the pills from the defendant’s pocket and placed him under arrest for possession of Carisoprodol, a Schedule IV controlled dangerous substance. At some point in the encounter, which is not further described, the officer ran a warrant check on the defendant which proved negative.
On October 21, 2009, the defendant was charged by bill of information with possession of Carisoprodol (Soma), a violation of La. R.S. 40:969(C). The defense filed a motion to suppress, combined with a request for a preliminary examination, as to this charge and other charges pending against the defendant. The motions in these cases, as well as a probation revocation, were combined for hearing. After a hearing held on February 10, 2010, the district court found probable cause for the instant charge and denied the defendant’s motion to suppress. The district court also revoked the defendant’s probation for prior convictions and imposed the previously suspended sentence.
Immediately following this ruling, the defendant pleaded guilty to the instant charge, reserving his right to contest the district court’s ruling on the suppression motion pursuant to State v. Crosby, 338 So.2d 584 (La.1976). As part of the plea agreement, the state dismissed the charges pending in the unrelated docket number and agreed not to file a habitual *954 offender bill against the defendant. The district court |3then sentenced Martin to five years imprisonment at hard labor, to run concurrently with the sentences imposed after the probation revocation.
On appeal, Martin argued the district court erred in denying his motion to suppress and in imposing an excessive sentence. As to the suppression motion, the defendant contended Cpl. Gibbs did not have reasonable suspicion a crime had been, was being, or was about to be committed at the time the officer asked for his identification, ran the warrant check or continued to ask him questions. Because the officer had no reason to detain Martin or to question him, the defendant argued on appeal that any evidence seized as a result of the illegal detention should have been suppressed as fruit of the poisonous tree pursuant to Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
A majority of the court of appeal panel agreed with Martin. See State v. Martin, 2010-0588 (La.App. 3 Cir. 12/8/10); 54 So.3d 111. The appellate panel majority and the dissent had no disagreement that Cpl. Gibbs did not initially “seize” Martin by stopping at the threshold of the Five Star to engage him in conversation. However, for the majority of the panel, the crux of the case was the officer’s decision to retain Martin’s identification for purposes of running a warrant check. Because the officer had gone “a step further and detained defendant to check for outstanding arrest warrants,” the majority concluded the casual conversation ended “because the Defendant was no longer free to disregard Corporal Gibbs’ questions and walk away.” Id., 2010-0588, p. 5; 54 So.3d at 115. The appellate majority thus held, at that point, “[t]he stop became forcible, an intrusion upon the Defendant’s liberty and/or privacy, when Corporal Gibbs asked the Defendant for his identification to check for outstanding warrants.” Id. Finding the officer’s testimony “did not include any articulable facts or particularized suspicions about the Defendant’s involvement |4in criminal conduct prior to detaining him,” the appellate majority held the officer had an insufficient basis under La.C.Cr.P. art. 215.1(A) for detaining Martin.[1] Id., 2010-0588, p. 7; 54 So.3d at 116. “[Vjiewing the picture as a whole,” the court of appeal majority found the district court erred in denying the defendant’s motion to suppress, and reversed and set aside the defendant’s conviction and sentence. Id.[2]
The dissenting appellate judge found nothing in the encounter between the officer and the defendant which implicated Fourth Amendment concerns. The dissent emphasized both men knew each other “from previous encounters around town such as football games and other civic functions.” Id., 2010-0588, p. 2; 54 So.3d at 118 (Amy, J., dissenting). According to the dissent, the acquaintanceship underscored that defendant “voluntarily complied with the officer’s request for identification,” and voluntarily “offered a *955 response to the officer’s potentially incriminating question.” Id,., 2010-0588, p. 2; 54 So.3d at 117 (Amy, J., dissenting). The dissent thus concluded that there was “no evidence that the defendant’s response to the officer was coerced.” Id.
This court granted the state’s writ application to consider the correctness of the ruling of the court of appeal majority. State v. Martin, 2011-0082 (La.6/17/11); 63 So.3d 1042.
LAW AND DISCUSSION
This matter is before us for a determination of whether the court of appeal erred in reversing a trial court ruling which denied defendant’s motion to suppress physical 1 .¡¡evidence. The State bears the burden of proving the admissibility of the evidence seized without a warrant when the legality of a search or seizure is placed at issue by a motion to suppress evidence. La.C.Cr.P. art. 703(D).[3] A trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there has been an abuse of that discretion. State v. Wells, 2008-2262, p. 5 (La.7/6/10); 45 So.3d 577, 581.
The Fourth Amendment to the United States Constitution and La. Const, art. 1, § 5 guarantee citizens the right to be free from unreasonable searches and seizures. The Fourth Amendment provides that the people shall “be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.... ” La. Const, art. 1, § 5 provides in pertinent part: “Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable, searches, seizures, or invasions of privacy.”
Clearly, not all encounters between law enforcement and individual citizens constitute “seizures.” See Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). Federal jurisprudence has concluded that a “seizure” occurs “[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” Id. This court has held, “[ujnder Louisiana’s slightly broader definition of the term, a seizure may also occur ‘when the police come upon an individual with such force that, regardless of the individual’s attempt to flee or elude the encounter, an actual stop of the individual is virtually certain [to occur].’ ” State v. Sylvester, 2001-0607, p. 3 (La.9/20/02); 826 So.2d 1106, 1108, quoting State v. Tucker, 626 So.2d 707, 712 (La.1993).
| fiThe Supreme Court has recognized three distinct types of police-citizen interactions with accompanying levels of justification to establish that the government action was reasonable or necessary: (1) arrest, which must be supported by probable cause, see Maryland v. Pringle, 540 U.S. 366, 370, 124 S.Ct. 795, 799, 157 L.Ed.2d 769 (2003); (2) brief investigatory stops, which must be supported by reasonable articulable suspicion, see Terry, 392 U.S. at 21, 88 S.Ct. at 1880; and (3) brief encounters between police and citizens, which require no objective justification, see Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). Under Louisiana law, the same levels of justification are needed to find reasonable each of these three types of police/citizen interactions. See State v. Anthony, 1998-0406, p. 19 (La.4/11/00); 776 So.2d 376, 389 (probable cause needed for arrest); La. *956 C.Cr.P. art. 215.1(A) (reasonable suspicion needed for temporary investigatory stop); and State v. Sherman, 2005-0779, p. 7 (La.4/4/06); 931 So.2d 286, 291 (mere communication implicates no Fourth Amendment concerns).
In this case, the state contends the facts show a consensual encounter between a law enforcement officer and a pedestrian. According to the state, no Fourth Amendment protections, or protections under the state constitution, were implicated or violated by any of Cpl. Gibbs’ actions. The defense disagrees, arguing the officer’s retention of his identification in order to check for outstanding warrants, as well as the retention of his identification while asking potentially incriminating questions, changed the nature of the police/citizen contact from initially consensual to a detention requiring reasonable articulable suspicion of criminal activity.
We have held that a law enforcement officer may approach any person and ask simple questions without a requirement of reasonable suspicion of criminal activity. See State v. Herrera, 2009-1783, p. 1-2 (La.12/18/09); 23 So.3d 896, 897; Sherman, 2005-0779, p. 7; 931 So.2d at 291 (“The officers did not need either reasonable suspicion for an investigatory stop or probable cause for an arrest to approach the defendant, inquire why he was parked at the side of the road, and ask for some identification ... [m]ere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.”). This third level of police/citizen encounter is less formal than that of an “investigatory stop,” and is, essentially, a “consensual encounter” involving minimal police contact which does not invoke constitutional safeguards. See Bostick, 501 U.S. at 439, 111 S.Ct. at 2388 (“[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times.”) (citations omitted); Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (“[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.”); Sylvester, 2001-0607, p. 4; 826 So.2d at 1108 (quoting Bostick); State v. Lewis, 2000-3136, p. 3 (La.4/26/02); 815 So.2d 818, 820, cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002) (quoting Royer).
In addition, “an officer’s request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave.” Sherman, 2005-0779, p. 7; 931 So.2d at 291; Lewis, 2000-3136, p. 3; 815 So.2d at 820 (same); State v. McDaniels, 2001-0305, p. 1 (La.12/7/01); 803 So.2d 966, 967 (same); see I.N.S. v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984).
The legal question presented in this matter is whether Martin was seized at any point for purposes of the Fourth Amendment or state constitutional protections considering the totality of circumstances of the encounter. Applying the law to the present case, Cpl. Gibb’s request to see the defendant’s identification (presumably his driver’s license but not clearly indicated in the record) did not by itself turn the otherwise consensual encounter into a forcible detention. Police remain free to approach an individual on *957 the street to engage him in conversation, which may include questions which invite an incriminating response, and may also ask for some identification without implicating the Fourth Amendment. See Lewis, 2000-3136, p. 3; 815 So.2d at 820.
What we must next determine is whether the officer’s decision to retain the defendant’s identification, after inspecting it briefly, for however long it takes to conduct a warrant check, transformed his consensual encounter with a pedestrian into a Fourth Amendment event requiring at least reasonable suspicion for a forcible detention.
We are aware that some jurisdictions subscribe to a per se rule in the context of pedestrian stops. In other words, those courts have held that an officer’s retention of an individual’s identification in the course of continued questioning, or to check for outstanding warrants, creates an atmosphere in which an individual, as a general rule, will not reasonably feel free to terminate the encounter. Thus, these courts have held that a detention or seizure has occurred, necessitating at least reasonable suspicion in order to justify a restraint on the individual’s liberty. See United States v. Lambert, 46 F.3d 1064, 1068 (10th Cir.1995) (“[w]hen law enforcement officials | ¡¡retain an individual’s driver’s license in the course of questioning him, that individual, as a general rule, will not reasonably feel free to terminate the encounter,” and a seizure for Fourth Amendment purposes thus occurs); United States v. Jordan, 958 F.2d 1085, 1087 (D.C.Cir.1992) (“[O]nce the identification is handed over to police and they have had a reasonable opportunity to review it, if the identification is not returned to the detainee [it is] difficult to imagine that any reasonable person would feel free to leave without it.”) (internal quotation marks and citations omitted); State v. Page, 140 Idaho 841, 845, 103 P.3d 454, 458 (2004) (“This Court is concerned about the implications of a rule allowing law enforcement officers the ability to initiate consensual encounters with pedestrians in order to seize identification and run a warrants check.”).
The per se rule draws heavily on the Supreme Court’s decision in Royer, which in the context of the detention of an airline passenger in an airport concourse, stated:
Asking for and examining Royer’s ticket and his driver’s license were no doubt permissible in themselves, but when the officers identified themselves as narcotics agents, told Royer that he was suspected of transporting narcotics, and asked him to accompany them to the police room, while retaining his ticket and driver’s license and without indicating in any way that he was free to depart, Royer was effectively seized for the purposes of the Fourth Amendment. These circumstances surely amount to a show of official authority such that a reasonable person would have believed he was not free to leave.
Id., 460 U.S. at 501-502, 103 S.Ct. at 1326 (citation omitted). Courts relying on Royer for the per se rule have noted the impractical and unrealistic option of a reasonable person in modern society to abandon one’s identification, as an individual is practically immobilized without adequate identification. See State v. Daniel, 12 S.W.3d 420, 427 (Tenn.2000); Lambert, 46 F.3d at 1068; Jordan, 958 F.2d at 1087.
After due consideration, we reject a per se rule under these facts. Instead, we believe the determination of whether a seizure has occurred is a fact-intensive l10analysis in which a reviewing court must consider the totality of the circumstances. As stated by the Supreme Court in Bostick:
We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must *958 consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter.
Id., 501 U.S. at 439, 111 S.Ct. at 2389. We note “police-citizen encounters do not become ‘seizures’ simply because citizens may feel an inherent social pressure to cooperate with police.” Daniel, 12 S.W.3d at 425, citing People v. Paynter, 955 P.2d 68, 72 (Colo.1998). Yet, “[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.” Delgado, 466 U.S. at 216, 104 S.Ct. at 1762. Courts must pay attention to the facts of each encounter, while keeping in mind the realities of every day life and the importance of an individual’s identification. As noted by the Florida Supreme Court,
[c]ertainly, the dangers posed by crimes such as identity theft and the ever-present threats to our national security makes the act of identifying oneself through presentation of valid, government-issued identification a necessary part of a panoply of human endeavors, from cashing a check to boarding an airplane.
Golphin v. State, 945 So.2d 1174, 1189-1190 (Fla.2006), cert. denied, 552 U.S. 810, 128 S.Ct. 40, 169 L.Ed.2d 11 (2007). In examining the totality of the circumstances, a court must look to “numerous factors, including the time, place and purpose of the encounter, the words used by the officer, the officer’s tone of voice and general demeanor, the officer’s statements to others present during the encounter, the threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen.” United States v. Weaver, 282 F.3d 302, 310 (4th Cir.2002), cert. denied, 537 U.S. 847, 123 S.Ct. 186, 11154 L.Ed.2d 75 (2002).
In addition, we generally reject the premise that among the totality of the circumstances some facts have more weight and relevance than others. Certainly, the retention of identification during the course of further interrogation or search factors into whether a seizure has occurred.[4] See Weaver, 282 F.3d at 310, 312 (“We expressly refuse to adopt a brightline rule that when an officer retains an individual’s identification beyond its intended purpose, in this case checking for outstanding warrants, the individual whose identification is retained is effectively seized for purpose of the Fourth Amendment .... While it is without question that a driver’s license is one of the most valuable pieces of personal identification possessed by any citizen, it does not logically follow that any time an officer retains someone’s driver’s license that such retention blossoms into an unconstitutional seizure .... something more is required.”) (footnote omitted); United States v. Tavolacci, 895 F.2d 1423, 1425-1426 (D.C.Cir.1990) (“[T]he retention of papers under some circumstances may transform an interview into a seizure, where it is prolonged or is accompanied by some other act compounding an impression of restraint.”) (citations omitted); Golphin, 945 So.2d at 1188 (“[TJheoretically, retention of Golphin’s identification would not have constrained his ability to either request the return of the identification or simply *959 end the encounter by walking into the apartment in which he was staying.”).
Reviewing the totality of the circumstances here, we are confronted with the reality that the scant record leaves many questions unanswered. Other than some few details elicited on cross-examination and re-direct examination, Cpl. Gibbs’ testimony about the entire encounter was spare. He testified:
|12I was walking into the Five Star in Moss Bluff. I saw Terrence, [sic[5]] He was walking out. I knew Terrence from when he lived in Westlake. I lived in Westlake. I used to see him at football games, out and about town. I asked him how he was doing. I knew he had been in some trouble in Lake Charles, so I asked him for his ID, to check him for warrants. He said — he gave me his ID. We talked a little bit. He was nervous, sweating profusely. So I asked him, I said, you know, “Terrence [sic], you got anything illegal on you?” He said, “Yes, sir, I got four Somas in my pocket.” And from there, I had to pat him down, recover the Somas, arrested him and booked him in for possession. See R. Vol. 1, p. 77-78.
It is not clear exactly when Cpl. Gibbs ran the warrants check. Presumably, he did so before placing the defendant under arrest, as the officer would have had little need to check for outstanding warrants on the scene after taking the defendant into custody and transporting him to the station house for booking on the drug charge, at which time a warrant check would have been conducted as a routine matter. Nor is it clear how the officer ran the warrants check, ie. whether he stood next to the defendant while he communicated with the Sheriffs Office with a hand-held radio, or retreated to a patrol car.[6] Nor is it clear exactly what identification Cpl. Gibbs obtained from the defendant. Presumably, the identification obtained was the defendant’s driver’s license reflecting his address and birth date, but the record is uncertain about this point.
Thus, the appellate panel majority had an uncertain basis for subscribing to a brightline per se rule in the present case. At the least, it seems clear that the encounter between Cpl. Gibbs and the defendant was relatively brief, even assuming the officer actually conducted the warrant check as he and defendant engaged in “a | islittle bit” of small talk outside the Five Star.[7] Under the totality of the circumstances provided here, the dissenting judge appears correct that nothing in the conduct of the officer decisively changed the consensual nature of the officer’s brief encounter with the defendant.
We note the warrant check did not take so long that a reasonable person, having surrendered his identification in the first place to the police for inspection, would understand that he was no longer free to end the small talk and go about his busi *960 ness. By contrast, in Lambert, supra, the officers held the defendant’s identification for 20 to 25 minutes after approaching him in the airport parking lot before conducting the warrant check, which came back negative. Under those circumstances, the federal appellate court had no difficulty in concluding “the thirty minute retention of the license exceeded the permissible length of time to determine if Mr. Lambert was wanted for any crimes.” Id., 46 F.3d at 1068 n. 3.
Here, there was no abuse of the district court’s discretion in its denial of the defendant’s motion to suppress. The record fails to support a finding that there was an unmistakable show of official authority in the police/citizen encounter at issue which would have indicated to a reasonable person that he was not free to leave. We find, as did the dissenting appellate judge, that Martin voluntarily complied with the officer’s request for identification and voluntarily offered a response to the officer’s potentially incriminating question. Under the totality of the circumstances, we find the officer’s brief retention of Martin’s identification under these facts did not change the nature of this essentially consensual encounter and the officer lawfully retrieved the Soma pills from the defendant’s pocket.
1140ur ruling today underscores our commitment to the totality of the circumstances test in determining whether or not an unreasonable seizure or detention has occurred and our rejection of a brightline or per se rule. Consequently, our ruling in this particular matter is limited to the facts adduced in the record. We note approvingly the caution of the Florida Supreme Court and the possibility that different facts might produce a different outcome:
While we approve the decision of the district court below, our decision today does not stand for an absolute, expansive proposition that retaining identification for the purpose of conducting a warrants check could never implicate constitutional safeguards. Certainly, we can conceive of circumstances where the retention of identification for the purpose of running a warrants check or other purposes, when viewed in the totality of the circumstances, might implicate the Fourth Amendment.
Golphin, 945 So.2d at 1189.
DECREE
Based on the foregoing, we find the court of appeal erred in reversing the district court’s denial of the defendant’s motion to suppress. We reverse the ruling of the appellate court and remand the matter to the court of appeal for consideration of the defendant’s remaining assignment of error.
REVERSED AND REMANDED.

. La.C.Cr.P. art. 215.1(A) states: "A. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions." The right of law enforcement officers to stop and interrogate persons reasonably suspected of criminal conduct is recognized, as well, by both state and federal jurisprudence. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Morgan, 2009-2352, p. 6 (La.3/15/11); 59 So.3d 403, 407-408.

. The court of appeal did not reach the defendant's assignment of error regarding exces-siveness of sentence, finding its ruling on the suppression issue made this alleged error moot.

. La. C. Cr.P. art. 703(D) provides in pertinent part: “On the trial of a motion to suppress filed under the provisions of this Article, ... the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.”

. We can, of course, conceive of some instances in which a single fact would have conclusive relevance, such as when an officer demanded to see an individual’s identification or asked an individual questions at gunpoint.

. The bill of information shows the defendant’s first name is spelled "Terrance.” R. Vol. l,p. 5.

. Compare with Golphin, 945 So.2d at 1177 ("... we determine that the totality of the circumstances of Golphin's encounter with law enforcement indicates that he was not seized for purposes of the Fourth Amendment when the police officer held in her hand at that specific site the identification he had consensually and voluntarily provided and viewed it as she conducted a computerized check for warrants in his presence and without moving away from that location where the identification had been consensually and voluntarily produced.”).

. Even one of the courts which has ascribed to the per se rule conceded "the temporary deprivation of [the defendant's] identification or travel documents might not significantly interfere with his intended movements, at least if that deprivation lasted only a few moments.” Jordan, 958 F.2d at 1088.