JAMES F. McKAY III, Judge.
_JjThe defendant, Robert Matthews, appeals the trial court’s judgment finding of probable cause and denying his motion to suppress the evidence. We affirm the trial court’s judgment.
STATEMENT OF CASE
On June 28, 2011, the State charged the defendant Robert Matthews with one count of possession of diazepam, a violation *892 of La. R.S. 40:969(C). Robert Matthews pled not guilty at his arraignment on June 30, 2011. On July 28, 2011, the trial court found probable cause and denied his motion to suppress the evidence.
On August 5, 2011, the defendant appeared for a pre-trial conference and pled guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). On that same date, he waived any sentencing delays and was sentenced to serve thirty (30) months at hard labor, suspended, and thirty (30) months active probation. On August 23, 2011, the trial court granted his motion for appeal.
STATEMENT OF FACT
Officer Calvin Banks testified that on June 20, 2011, he and his partner, Officer Watson, responded to a call of three suspicious people, all of whom were | ..wanted by police, selling drugs at 1517 Franklin Avenue. When the officers arrived at 1517 Franklin Avenue, they observed two unknown black females and one unknown black male, the defendant. Officer Banks requested that the subjects provide him with identification. The two females provided the officers with state-issued identification cards, and the defendant, Robert Matthews, who did not have an identification card, provided the officers with the name “Robert Mosley” and a date of birth of November 4, 1947. The officers were unable to locate any information on the defendant based on the name and date of birth he provided to them. The officers asked the defendant to provide them with a Social Security number, which he did. However, the officers were unable to locate any information on the defendant based on the Social Security number he provided to them. The officers then ran the address of 1517 Franklin Avenue in order to determine the defendant’s name, but were unable to obtain any information regarding the defendant based on his address. Ultimately, an unnamed relative at the Franklin Avenue address provided the officers with the defendant’s actual name. The officers ran the defendant’s actual name in their system and discovered that he was wanted on a court capias.[1] The officers placed the defendant under arrest for misrepresentation of identification pursuant to New Orleans Municipal Code § 54-487 and then proceeded to conducted a search incidental to the arrest. Pursuant to this search the officers found two blue pills in the defendant’s pocket, which they were able to identify as diazepam (valium). The defendant told the officers that he did not have a prescription for the diazepam found in his pocket.
On cross-examination, Officer Banks testified that the informant, who made |3the suspicious persons call, identified the three suspicious persons as Alexis Evans, Yolanda Evans, and Gerald Evans. However, the three people that the offices discovered at the location were identified as Alexis Evans, Debra Marsh, and the defendant, Robert Matthews.
When the officers arrived at the scene, Officer Banks observed Debra Marsh and Alexis Evans placing some items into a vehicle and the defendant sitting in a chair on the neutral ground. Officer Banks did not observe anyone selling drugs. When the defendant saw the officers he got out of his chair and walked towards them. Likewise, “some family members” came outside from the interior of the residence at 1517 Franklin Avenue when they saw the officers.
*893 Officer Banks clarified that he ran the defendant’s name through a motions computer, which verifies a person’s identity. Officer Banks explained that every citizen of New Orleans who has a state-issued identification card can be identified through the motions computer. Officer Banks believed that the defendant’s name was not Robert Mosely, as the defendant indicated to the officers, as the name Robert Mosely did not appear in the motions computer. In addition, the defendant indicated to Officer Banks that he had previously been arrested in Orleans Parish. Evidence of the defendant’s prior arrest would have been verified through the use of the officers’ computer. However, the officers could not find any information relating to a Robert Mosely in their system. Officer Banks testified that he and Officer Watson spent approximately forty-five minutes trying to figure out the defendant’s identity.
During the course of the officers’ investigation of the defendant’s identity, the defendant was standing outside, in front of the police vehicle, next to Officer Banks. At that time, the defendant was not in handcuffs. Officer Banks confirmed |4that, at the time of his arrest, the defendant resided at 1517 Franklin Avenue, the location of his arrest.
The defense rested without calling any witnesses.
ERRORS PATENT
A review of the record reveals no patent errors.
DISCUSSION
ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant argues that the trial court erred in denying his motion to suppress the evidence because the officers lacked reasonable articulable suspicion to conduct an investigatory stop, and because the officers’ forty-five minute investigation was a forcible detention. This assignment of error lacks merit.
At a hearing on a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). Trial courts are vested with great discretion when ruling on a motion to suppress, and the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914.
In Louisiana, a law enforcement officer may approach any person and ask simple questions without a requirement of reasonable suspicion of criminal activity. See State v. Martin, 2011-0082, p. 6 (La.10/25/11), 79 So.3d 951, 956. See also State v. Herrera, 2009-1783, p. 1-2 (La.12/18/09), 23 So.3d 896, 897. This type of encounter is less formal than that of an investigatory stop, and is, essentially, a consensual encounter involving minimal police contact which does not invoke constitutional safeguards. Id. at p. 7, 79 So.3d at 956; See Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991); See also, State v. Sherman, 2005-0779, p. 7 (La.4/4/06), 931 So.2d 286, 291. Mere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention. Martin, 2011-0082, p. 6, 79 So.3d at 956. Indeed, police officers are free to approach an individual on the street and engage him or her in conversation, which may include questions which invite an incriminating response, and may also ask for some identification without implicating the Fourth Amendment. See, id. at p. 8, 79 So.3d at 956-957; State v. Lewis, 2000-3136, p. 5 (La.4/26/02), 815 So.2d 818, 820. In addi *894 tion, an officer’s request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave. Sherman, 2005-0779, p. 7, 931 So.2d at 291.
In the case sub judice, Officers Banks and Watson were responding to a suspicious persons call when they first saw the defendant. The defendant approached the officers, and the officers asked him for some identification. When the defendant provided the officers with a name that did not register in their motions computer, the officers asked the defendant additional questions in an attempt to ascertain his identity. While the officers questioned the defendant, he was not in handcuffs, nor was he being restrained by the officers.
The defendant argues that the officers violated his Fourth Amendment right to be free from unreasonable searches and seizures because they did not have any reasonable articulable suspicion to stop and detain him in the first place. Defendant’s argument on this point is misguided. It is well established that officers do not need reasonable articulable suspicion to stop an individual and ask Rhim simple questions such as his identity. Martin, 2011-0082, p. 6, 79 So.3d at 956.
In I.N.S. v. Delgado, 466 U.S. 210, 221, 104 S.Ct. 1758, 1765, 80 L.Ed.2d 247 (1984), the Court found that “brief’ questioning by I.N.S. agents of factory workers were “classic consensual encounters, rather than Fourth Amendment seizures.” Likewise, in Martin, 2011-0082, p. 13, 79 So.3d at 960, the Court found that the officer’s “brief’ retention of the defendant’s driver’s license while he conducted a warrant check “did not change the nature of [an] essentially consensual encounter.” However, in United States v. Lambert, 46 F.3d 1064, 1068 (U.S. 10th Cir.1995), the appellate court held that the arresting officers turned an otherwise consensual encounter with the defendant into a seizure when they held his driver’s license for thirty-minutes while they checked to see if there were any outstanding warrants for him. If a “reasonable person would feel free to disregard police and go about his business, the encounter is consensual and the fourth amendment is not implicated.” See Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).
Here, the arresting officers questioned the defendant for forty-five minutes. The encounter began as a consensual encounter, but appears to have been turned into forcible detention when the officers held the defendant for forty-five minutes by way of questioning him about his identity. See Lambert, 46 F.3d at 1068.
The defendant next argues that because the initial consensual encounter turned into a seizure, the officers lacked reasonable articulable suspicion to conduct an investigatory stop of the defendant.
In Louisiana, a police officer “may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an 17offense and may demand of him his name, address, and an explanation of his actions.” La.C.Cr.P. art. 215.1(A); See also, State v. James, 2007-1104, p. 3 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 752.
In determining whether the police possessed the requisite minimal level of objective justification for an investigatory stop based on reasonable suspicion of criminal activity, reviewing courts look at the totality of the circumstances, allowing officers to make inferences from and deductions about the cumulative information available to them based on their own expe *895 rience and specialized training. James, 2007-1104, p. 3, 980 So.2d at 752; see also Florida v. Bostick, 501 U.S. at 439, 111 S.Ct. at 2388-89.
In the case sub judice, the officers arrived at the designated location based on an informant’s tip that two females and one male, all of whom were situated at the location, had outstanding warrants for their arrests. When the officers arrived, they observed two females and one male. The officers requested the identities of all three individuals. The defendant gave the officers a false name. When the officers could not verify the defendant’s identity, the officers sought to detain the defendant to ask him some questions regarding his identity. The officers only sought to detain the defendant after they suspected that the defendant had given them a false identity. Based on the totality of the circumstances, the record establishes that the officers had reasonable articulable suspicion to turn their consensual encounter with the defendant into an investigatory stop.
This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 2
In his second assignment of error, the defendant argues that the arresting police officers had no probable cause to arrest him. Specifically, the defendant Rargues that he did not violate the New Orleans Municipal Code, § 54-487, the ordinance under which the officers arrested him. This assignment of error lacks merit as well.
New Orleans Municipal Code § 54-487 provides, in pertinent part:
(a) [False identification.] No person shall misrepresent his or her name, age or residence by use of any identification card, birth certificate, or similar identification containing any false, erroneous or incorrect information or misrepresent his or her name, age or residence by use of the identification of another person. The use, presentation or possession of an identification card, birth certificate, or similar identification or the identification of another to misrepresent a person’s name, age or residence, shall constitute prima facie evidence of a violation of this section.
The defendant argues that he did not violate the above ordinance, because he did not misrepresent his name or age by way of an identification card, birth certificate, or the like; instead, the defendant simply misrepresented his identity during the course of his conversation with the officers. The above ordinance is unclear. While the ordinance clearly prohibits an individual from misrepresenting his or her name, age or residence by use of a tangible item (e.g., identification card, birth certificate, or other identification), it is unclear whether it prohibits an individual from verbally misrepresenting his or her name, age, or residence. Indeed, the words “misrepresent his or her name, age or residence by use of the identification of another person” do not clearly prohibit an individual from simply misrepresenting his or her identity verbally-
However, the defendant’s argument that the officers lacked probable cause to arrest him fails because the officers had probable cause to arrest the defendant for resisting them, as per La. R.S. 14:108.
laLa. R.S. 14:108 provides, in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the of *896 fender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase “obstruction of’ as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(c) Refusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer.
It is not a prerequisite for the existence of probable cause to make an arrest that the police officers know at the time of the arrest that the particular crime has definitely been committed; it is sufficient that it is reasonably probable that the crime has been committed under the totality of the known circumstances. State v. Gates, 24,995 (La.App. 2 Cir. 1/19/94), 630 So.2d 1345. An arresting officer need only have a reasonable basis for believing that his information and conclusions are correct. State v. Pham, 2001-2199, p. 6 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 219.
As stated previously, providing a false name to an officer is a violation of La. R.S. 14:108. Officer Banks testified that the defendant gave him a name that could not be verified by his motions computer. Officer Banks also testified that the defendant told him he had been arrested in New Orleans before, but that Officer Banks could not find the name given to him by the defendant in his computer, which was odd. Based on the foregoing, Officer Banks believed that the name |ingiven to him by the defendant was false. The officers therefore had probable cause to arrest the defendant for providing them a false name.
This assignment has no merit.
CONCLUSION
Based on the above and foregoing, we affirm the defendant’s conviction and sentence.
AFFIRMED

. The officers were unable to verify the court capias, however, and a later search revealed there was no outstanding warrant.