ROBERT M. MURPHY, Judge.
12Pefendant, Steven P. Alberti, pled guilty to and was sentenced for one count of possession with intent to distribute marijuana in violation of La. R.S. 40:966A, one count of possession of a firearm while in possession of marijuana in violation of La. R.S. 14:95E, and one count of possession of cocaine in violation of La. R.S. 40:967C. Defendant appeals the trial court’s July 24, *354 2012 ruling denying his motion to suppress evidence and statements. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL BACKGROUND
On March 15, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant, Steven P. Alberti, with possession with intent to distribute marijuana in violation of La. R.S. 40:966A (count one); possession of a firearm while in possession of marijuana in violation of La. R.S. 14:95E (count two); and possession of cocaine in violation of La. R.S. 40:967C (count three). Defendant was arraigned on March 28, 2012, and pled not guilty. On July 17, 2012, a hearing was held on defendant’s motions to suppress statements and 1 ...evidence, and the matter was submitted. The trial judge denied the motions to suppress on July 24, 2012.
On September 17, 2012, defendant withdrew his not guilty pleas and pled guilty as charged, reserving his rights pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Afterward, the trial judge sentenced defendant to imprisonment at hard labor for five years on each count to run concurrently, and he ordered the sentence on count two to be served without benefit of parole, probation, or suspension of sentence. Defendant now appeals the trial court’s July 24, 2012 denial of his motions to suppress.
ASSIGNMENT OF ERROR
In his sole assignment of error, defendant contends that the trial court erred in denying his motions to suppress evidence and statements resulting from an illegal investigatory stop in violation of the Fourth Amendment.
LAW AND ANALYSIS
Defendant argues that the trial judge erred by denying his motion to suppress evidence. He contends that the arresting detectives did not have reasonable suspicion that he was committing, had committed, or was about to commit a crime because the detectives did not see him act suspiciously, and the confidential informant’s tip did not provide sufficient information about his alleged illegal activities. Therefore, defendant asserts that the investigatory stop by the detectives was unreasonable, and any evidence and statements obtained after the detectives’ initial stop must be suppressed.
In opposition, the State argues that defendant was free to disregard the officers when they asked him if he had anything illegal on him and walk away, but instead, defendant voluntarily answered the question to his legal detriment. The State contends that the police did not need reasonable suspicion to merely speak |4with defendant, and defendant was not seized under either the Fourth Amendment or the Louisiana Constitution. As such, the State maintains that the voluntary encounter that yielded contraband and incriminating statements was lawful.
At the suppression hearing, Detective Joshua Bermudez of the Jefferson Parish Sheriffs Office (JPSO) testified that they received information from a confidential informant that a man named “Steven,” who was later identified as defendant, was possibly involved in narcotics sales and lived near the intersection of Cleveland and Ithaca in Metairie. The confidential informant described defendant as being in his thirties with brown hair and a medium build. He also stated that defendant drove a blue Jeep that was raised up on “big wheels.”
On February 7, 2012, Detective Bermu-dez and his team went to the location *355 provided by the informant, and when they arrived, Detective Bermudez saw someone matching that description standing by the sidewalk in front of the house with a raised-up Jeep. The detectives parked their vehicles on the sidewalk and walked up to defendant. They told defendant they were with the JPSO and asked him “if he had anything illegal on him.” Defendant voluntarily said that all he had was a “bag of weed” in his pocket. Detectives Bermudez and Clogher removed the bag from defendant’s pocket and arrested defendant.
JPSO Detective Julio Alvarado arrived on the scene and was advised that defendant had been found in possession of marijuana. Detective Alvarado advised defendant of his Miranda rights, after which he asked defendant if he had any more marijuana in the house. Defendant voluntarily responded that he had about a quarter of a pound of marijuana inside the house. Detective Alvarado asked defendant for his consent to search the house, but defendant refused.
Detective Alvarado subsequently reviewed a rights of arrestee form with defendant. Defendant initialed next to each of his rights and signed the form, [ 5thereby indicating that he had been read his rights and was waiving them. Afterward, defendant gave a taped statement wherein he advised that he was holding the marijuana for his friend, “Justin,” that “Justin” allowed him to sell the marijuana, and that defendant would have to repay whatever amount of marijuana he sold.
Detective Bermudez applied for a search warrant for defendant’s residence, had it signed, and relocated back to the residence. When Detective Bermudez gave defendant a copy of the search warrant, defendant pointed out that it contained a wrong number. Detective Bermudez had them hold the search, after which he went back to the First District Station where he corrected the search warrant. Thereafter, Detective Bermudez returned to the commissioner, got the search warrant signed, and then went back to defendant’s house. During the search, detectives retrieved 1100 grams of green vegetable matter, a white powdered substance, a digital scale, a vacuum bag sealer, sandwich bags, multiple firearms (one of which was recovered from the Jeep), and assorted magazines and ammunition.
At the hearing on defendant’s motions to suppress evidence and statements, the State presented defense counsel and the trial judge with its memorandum in opposition to defendant’s motions. Afterward, the trial judge said he had read it and then asked defense counsel if he had any argument. A private bench conference was subsequently held, after which the trial judge denied the motion to suppress evidence without providing reasons.
In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). The trial court’s decision relative to the suppression of evidence is |fiafforded great weight and will not be set aside unless there has been an abuse of that discretion. State v. Wells, 08-2262 (La.7/6/10), 45 So.3d 577, 581.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Leonard, 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 765. However, not all encounters between law enforcement and individual citizens constitute “seizures.” State v. Martin, 11-82 *356 (La.10/25/11), 79 So.3d 951, 955. Federal jurisprudence has concluded that a “seizure” occurs “[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.” Id. The Louisiana Supreme Court has held that “[ujnder Louisiana’s slightly broader definition of the term, a seizure may also occur ‘when the police come upon an individual with such force that, regardless of the individual’s attempt to flee or elude the encounter, an actual stop of the individual is virtually certain [to occur].’ ” State v. Sylvester, 01-607 (La.9/20/02), 826 So.2d 1106, 1108.
In State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183, the Louisiana Supreme Court recognized a three-tiered analysis of interactions between citizens and the police. In the first tier, there is no seizure or Fourth Amendment concern during mere communication with police officers and citizens where there is no coercion or detention. The second tier consists of brief seizures of a person, under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), if the officer has an objectively reasonable suspicion, supported by specific and articulable facts, that the person is, or is about to be, engaged in criminal activity. State v. Fisher, 720 So.2d at 1183. The third tier is custodial arrest where 17an officer needs probable cause to believe that the person has committed a crime. Id.
Within the first tier, officers have “the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a ei'ime.” State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127, 1130. Further, the police do not need probable cause to arrest or reasonable suspicion to detain an individual each time they approach a citizen. Id. As long as the person approached by the officers remains free to disregard the encounter and walk away, there are no constitutional implications. Id.
“It is settled that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.” Florida v. Royer, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). (See also State v. Martin, 79 So.3d at 956 (quoting Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 2388, 115 L.Ed.2d 389 (1991)) (“[T]he proposition that police officers can approach individuals as to whom they have no reasonable suspicion and ask them potentially incriminating questions ... is by no means novel; it has been endorsed by the Court any number of times.”))
The determination of whether a seizure has occurred is a fact-intensive analysis in which a reviewing court must consider the totality of the circumstances. Martin, 79 So.3d at 957. In examining the totality of the circumstances, a court must look to “numerous factors, including the time, place and purpose of the encounter, the words used by the officer, the officer’s tone of voice and general demeanor, the officer’s statements to others present during the encounter, the ^threatening presence of several officers, the potential display of a weapon by an officer, and the physical touching by the police of the citizen.” Id. at 958. “Police-citizen encounters do not become ‘seizures’ simply because citizens may feel an inherent social pressure to cooperate with police.” Id. Yet, “[w]hile most citizens will respond to a police request, the fact that people do so, *357 and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.” Id.
In Martin, supra, cited by the State, an officer encountered the defendant at a convenience store. The two men knew each other, and the officer asked the defendant how he was doing. Because the officer knew the defendant had previously been in trouble with law enforcement, he asked the defendant for his identification to check for outstanding warrants. The officer noticed the defendant was nervous and sweating, which the officer considered uncharacteristic of their previous encounters. Based on these observations, the officer asked the defendant whether he “had anything illegal on him.” The defendant replied that he had four Soma pills in his pocket. The officer retrieved the pills and placed the defendant under arrest. The defendant filed a motion to suppress that was denied. Id. at 953.
The appellate court reversed the trial court’s denial of the motion; however, the Louisiana Supreme Court reversed the appellate court and reinstated the trial court’s ruling. The Louisiana Supreme Court found that the record failed to support a finding that there was an unmistakable show of official authority in the police/citizen encounter that would have indicated to a reasonable person that he was not free to leave. The Court also found that the defendant voluntarily complied with the officer’s request for identification and voluntarily offered a response to the officer’s potentially incriminating question. Under the totality of the circumstances, the Louisiana Supreme Court found that the officer’s brief | ^retention of the defendant’s identification did not change the nature of this essentially consensual encounter and that the officer lawfully retrieved the Soma pills from the defendant’s pocket. Martin, 79 So.3d at 960.
In State v. Thomas, 08-390 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, writ denied, 09-626 (La.11/25/09), 22 So.3d 170, also cited by the State, officers were conducting surveillance of a residence due to suspected illegal activity. The officers had received information that a black male was expected to arrive on a bicycle and distribute narcotics from the residence. At some point, a black male, later identified as the defendant, arrived on a bicycle. An officer exited his car, approached the defendant on foot, explained that he was conducting a narcotics investigation, and advised the defendant of his rights. The officer instructed the defendant to place his hands on the police vehicle, but the defendant did not comply. The officer then asked the defendant if he had any illegal narcotics on his person, and the defendant looked toward the ground and sighed. Based on this response, the officer asked the defendant if he had any drugs, and the defendant said he had crack cocaine in his pocket. The officer subsequently retrieved the substance and arrested the defendant. The defendant filed a motion to suppress that was denied. Id. at 82-83.
On appeal, we held that the trial court in Thomas did not err in its ruling. We held that the officer’s request for the defendant to place his hands on the police unit without the defendant’s compliance did not constitute a show of authority sufficient to raise the encounter to an investigatory stop under the second tier of Fisher. Notably, we also concluded that when the officer asked the defendant whether he had any narcotics, the defendant voluntarily answered that he had some in his pocket, which gave the officers probable cause to arrest the defendant and search him incident to arrest. Id. at 85.
*358 |TnIn State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268, cited by defendant in the instant case, officers received an anonymous tip from a concerned citizen that the defendant, Robertson, who was named and described, was selling drugs within the Magnolia Housing Development. The tip also described the defendant’s vehicle and provided an address where the vehicle would be parked when the defendant was not distributing narcotics. After going to the location, the officers saw the vehicle being driven away and followed the vehicle. When the defendant parked and exited the vehicle, the officers approached the defendant and asked his name. After the defendant identified himself, an officer informed him that he was under investigation for narcotics. A canine unit was called to the scene. When the dog indicated that an odor of narcotics was coming from inside the vehicle, the officer entered the vehicle and discovered a large plastic bag filled with crack cocaine. Thereafter, the defendant was placed under arrest.
The trial court denied the defendant’s motion to suppress the evidence, and the Fourth Circuit denied the defendant’s writ application. The Louisiana Supreme Court reversed, finding that there was no reasonable suspicion for the investigatory detention of the defendant. The Court noted that the officers did not observe any unusual or suspicious conduct on the defendant’s part. Furthermore, the Court also noted that the tip did not provide sufficiently particular information concerning the defendant’s future actions and, therefore, the officers lacked reasonable grounds to believe that the informant possessed reliable information about the defendant’s alleged illegal activities. Id. at 1270-71.
In the instant case, Detective Bermudez and his team, acting on a tip, went to the intersection of Cleveland and Ithaca in Metairie. When they arrived, Detective Bermudez observed defendant, who matched the description given, standing by a sidewalk in front of a residence at that location. The detectives parked their | Hvehicles on the sidewalk and walked up to defendant. They told him that they were with the JPSO and asked him “if he had anything illegal on him.” Defendant voluntarily answered that he had a “bag of weed” in his pocket.
Under the foregoing jurisprudence, we find that the detectives had the right to approach defendant in a public place and ask him a question, even without reasonable suspicion to believe that he had committed a crime. See Dobard, supra; Martin, supra; Thomas, supra. Defendant was free to disregard the encounter and walk away, given that he was standing in front of his home at the time of the encounter. However, he chose to voluntarily respond to the detectives’ potentially incriminating question by admitting that he was in possession of narcotics. Because of his admission, we find that the detectives had probable cause to arrest defendant and to retrieve the narcotics from defendant’s pocket during a search incident to arrest.
Furthermore, we find that defendant was not seized during this encounter as the record does not reflect that the detectives restrained defendant’s liberty by means of physical force or show of authority. The testimony at the suppression hearing reflects that only two detectives initially approached defendant and asked him a question. A third detective appeared after the first two detectives had already removed the bag from defendant’s pocket and placed defendant in handcuffs. Additionally, there is no evidence that the detectives displayed weapons, used a forceful tone of voice, or physically touched *359 defendant during the encounter. Although defendant asserts that the detectives drove their vehicles onto the sidewalk, we do not find that this raises the encounter to an investigatory stop. See State v. Thomas, supra (holding that the officer’s request for the defendant to place his hands on the police unit without the defendant’s compliance did not | ^constitute a show of authority sufficient to raise the encounter to an investigatory stop under the second tier of Fisher).
We find defendant’s reliance upon Robertson, supra, to be misplaced. Robertson is factually distinguishable from the instant case and, therefore, inapplicable. In the instant case, the detectives approached defendant on foot, whereas in Robertson, the officers stopped a vehicle the defendant was driving. Detectives in the instant case asked defendant if he was in possession of anything illegal, unlike in Robertson, where the officers only asked the defendant his name and then advised the defendant he was under investigation for narcotics. Furthermore, in the instant case, defendant voluntarily admitted he was in possession of narcotics which gave the detectives probable cause to arrest and search him; however, in Robertson, the defendant was not asked if he possessed contraband, and the defendant did not voluntarily admit he possessed contraband; nevertheless, the officers in that case summoned the canine unit to search the defendant’s vehicle. ■
Accordingly, we find that the trial judge did not err by denying defendant’s motions to suppress evidence and statements. Therefore, defendant’s sole assignment of error is without merit.

Errors Patent Discussion

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). No errors requiring corrective action were found.
CONCLUSION
11sFor the foregoing reasons, we affirm the trial court’s judgment denying defendant’s motions to suppress evidence and statements.
AFFIRMED.